| | |
|---|---|
| MARK B. FROST & ASSOCIATES<br>BY: Ryan M. Lockman, Esquire<br>1515 Market Street, Suite 1300<br>Philadelphia, PA 19102<br>P: 215-351-3333<br>RLockman@MFrostLaw.com | Attorneys for Plaintiff |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **CHRISTOPHER TERRANOVA,**<br>As a parent and a legal guardian of his minor children, C.T. and G.T., | : <br> : <br> : <br> : | |
| Plaintiff, | : <br> : | |
| v. | : <br> : | |
| **BOROUGH OF HASBROUCK HEIGHTS,**<br>**HASBROUCK HEIGHTS SCHOOL DISTRICT**<br>**POLICE CHIEF MICHAEL COLANERI**<br>in his individual and official capacities,<br>**OFFICER HAROLD VAN WINKLE,**<br>in his individual and official capacities,<br>**DR. MATTHEW HELFANT,**<br>in his individual and official capacities, | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | Civ. A. 2:19-cv-12515-JMV-JAD<br><br><br>**JURY TRIAL DEMANDED** |
| Defendants. | : <br> : | **AMENDED COMPLAINT** |

<u>**CIVIL ACTION – COMPLAINT**</u>

Plaintiffs Christopher Terranova (hereinafter "Plaintiff"), on behalf of his minor children, C.T. and G.T., by and through his attorneys, Mark B. Frost & Associates, hereby brings this Complaint against Defendants Borough of Hasbrouck Heights, Borough of Hasbrouck Heights Police Chief Michael Colaneri, Borough of Hasbrouck Heights Police Officer Harold Van Winkle, Hasbrouck Heights School District, and Hasbrouck Heights School District Superintendent Dr. Matthew Helfant, and avers as follows:

## I.     INTRODUCTION

1. Plaintiff brings this action to redress the excessive force used by Defendant Van Winkle upon Plaintiff's minor children, C.T. and G.T. Plaintiff seeks declaratory, injunctive, monetary and other appropriate relief to redress the rights secured to his children by the laws of the United States of America and the State of New Jersey.

## II.     JURISDICTION

2. This action is brought pursuant to 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343(3) and the aforementioned statutory and constitutional provisions.

3. Jurisdiction lies over state law claims based on the principles of supplemental jurisdiction, as codified at 28 U.S.C. § 1367.

4. The amount in controversy exclusive of interest and costs exceeds the sum of one hundred thousand ($100,000.00) Dollars.

## III.     VENUE

5. All claims herein arose within the jurisdiction of the United States District Court for the District of New Jersey and involve Defendants who reside within the jurisdictional limits. Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. § 1391(b) and (c).

## IV.     PARTIES

6. Plaintiff, Christopher Terranova, is an individual citizen of Bergen County, New Jersey, residing therein at 180 Burton Avenue, Hasbrouck Heights, NJ 07604, with his wife Lauren Terranova and their two minor children, C.T. and G.T.

7. Defendant Borough of Hasbrouck Heights is a municipality within the State of New Jersey and owns, operates, manages, directs and controls the Hasbrouck Heights Police

Department (HHPD), which employs the other named individual defendants and which maintains headquarters at 248 Hamilton Ave, Hasbrouck Heights, NJ 07604.

8. Defendant Police Chief Michael Colaneri has at all times material served as police chief of the HHPD, and in such a capacity oversees the operations of the HHPD, including but not limited to officer training, discipline, and assignments, and constitutes a final policymaker for the HHPD and the Borough of Hasbrouck Heights.

9. Defendant Harold Van Winkle is a Class III Police Officer for the HHPD and has maintained said position at all times material.

10. The Hasbrouck Heights School District (HHSD) is a school district located in Bergen County, New Jersey, with main offices located at 379 Boulevard, Hasbrouck Heights, NJ 07604. The School Board controls all operations for the entire Hasbrouck Heights School District.

11. At all times material, Dr. Matthew Helfant has been the Superintendent of the HHSD, and in such a capacity oversees the operations of the HHSD, and constitutes a final policymaker for the HHSD.

## V.   FACTS

12. In approximately mid-November 2018, both C.T. and G.T. were enrolled in and attending HHSD's Lincoln Elementary School; C.T. was in third grade and G.T. was in fifth grade.

13. At all times material herein, HHSD had entered into an agreement with the Borough Heights Police Department to provide security for three schools within the HHSD, including the Lincoln Elementary School.

14. Pursuant to said agreement, one Class III police officer would be assigned to Lincoln School at any given time, and said officer was at all times acting in the scope of his

employment with the police department, was subject to the rules and regulations of the police department, and was to act under the direction of the HHPD Chief of Police.

15. The officers selected for these school assignments were retired officers employed by HHPD for this assignment and classified as "Class III" officers of the HHPD. In such a capacity, a Class III officer maintains full police powers and responsibilities while on duty, and is subject to the applicable laws and police policies for the police department where said officer is employed.

16. One such Class III officer hired by HHPD for the purpose of providing school security was Defendant Van Winkle.

17. The primary purpose of having the officers in the school was to stand guard by the main entrance of the school, in order to deter and prevent intruders and/or dangerous individuals from entering the school, such as a school shooter or any other outside individual posing a threat to the welfare and safety of the children and staff inside the school.

18. At Lincoln Elementary School, the students' book bags and backpacks were maintained near the front entrance, where the assigned officer was stationed.

19. In or around approximately mid-November 2018, Defendant Van Winkle was assigned to the Lincoln School and acting under color of law while on duty at the school.

20. On said date, when children were in the vicinity of the front entrance, Officer Van Winkle began yelling at said children that they were being too noisy.

21. This was not part of Van Winkle's duties, which were strictly to ensure the safety of the children and staff and to guard against potential intruders.

22. Thereafter during this incident Defendant Van Winkle threatened and intimidated the children by withdrawing his police-issued baton and banged it against the wall, in order to intimidate and threaten the students with physical harm if they remained noisy.

23. After C.T. made a noise, Van Winkle took his baton and intentionally shoved it into the chest and/or collar bone of C.T. and presses him against the wall, causing C.T. physical pain and suffering, and preventing C.T. from leaving.

24. As a result of Van Winkle's yelling and use of the baton, C.T. was put into reasonable fear of imminent bodily harm.

25. Upon information and belief, Van Winkle engaged in similar conduct with his baton towards another child during this same incident, knocking said child to the ground.

26. On another incident in or about the end of November 2018, while children were again gathered near the front entrance, Van Winkle kicked G.T.'s school bag and the bag of another child for no justifiable reason, thus threatening the imposition of physical harm on G.T..

27. As a result of Van Winkle's yelling, use of the baton, and his kicking of G.T.'s bag, G.T. was put into reasonable fear of imminent bodily harm.

28. The unlawful touching and threatening manner of Defendant Van Winkle was without provocation, and none of the children at any point posed a threat to each other or to Officer Van Winkle.

29. Defendants' conduct constituted an unreasonable use of force, as well as an assault and battery.

30. Upon information and belief, at the time of these incidents, Van Winkle had not been given sufficient training.

31. In August of 2018, Chief Colaneri, on behalf of HHPD, had sought a waiver - from the Police Training Commission (PTC) - of Van Winkle's basic training required prior to employment. This waiver was granted, meaning that Van Winkle was not given basic training immediately prior to being employed as a Class III Officer or assigned to HHSD.

32. Moreover, Van Winkle was still required by the PTC to obtain the state-mandated training for School Resource Officers, and other training by the PTC.

33. However, at the time of these aforementioned incidents, Van Winkle had not been sent (or even scheduled to be sent), by the HHPD, to state-mandated training for School Resource Officers, which is required under New Jersey State statute and required by the PTC.

34. Rather, in January of 2019, after the aforementioned incidents, Van Winkle was finally scheduled by the HHPD to receive said training in April of 2019. It is unknown if Van Winkle actually attended said training in April 2019.

35. By allowing Van Winkle to work at HHSD without adequate training, Chief Colaneri, HHPD, Dr. Helfant, and HHSD, knowingly allowed Van Winkle to interact with students and perform duties inside school without the training required to properly perform the functions of the job.

36. Upon information and belief, Chief Colaneri and/or Dr. Helfant were aware of Van Winkle's failure to attend said training, yet they kept him assigned to HHSD prior to receiving same.

37. Further, upon information and belief, Chief Colaneri and/or Dr. Helfant were aware of the aforementioned incidents set forth above, yet took no action to punish Van Winkle or permanently remove him from his duties as a Class III officer assigned to HHSD.

38. Chief Colaneri and Dr. Helfant knowingly acquiesced to Van Winkle's conduct.

39. As a result of complaints by various teachers and parents, Van Winkle was temporarily removed from Lincoln Elementary School by Chief Colaneri.

40. However, within months, Chief Colaneri returned Van Winkle to duty within the Hasbrouck School District, with the permission of Dr. Helfant and the HHSD, where he continues to serve as a police officer inside schools, thus posing an ongoing threat to students.

41. Upon information and belief, Dr. Helfant, individually and as a policymaker for Hasbrouck Heights School District, and Chief Colaneri, individually and as a policymaker for HHPD, were aware of the aforementioned incidents by Officer Van Winkle and knowingly acquiesced to said conduct, by failing to take action after the first and also the second incident involving Van Winkle, and by knowingly allowing Van Winkle to remain an officer within the school district.

42. Upon information and belief, Dr. Helfant and Chief Colaneri were also aware of Van winkle's lack of adequate training, as set forth above.

43. Upon information and belief, Dr. Helfant, as superintendent, maintains the final say as to whether officers are permitted inside the facilities at HHSD. Upon information and belief, the police department through Chief Colaneri would issue proposed schedules for officers to be assigned to particular schools within HHSD; Dr. Helfant, as Superintendent, maintains the discretion to approve disapprove any such schedule and not permit certain officers inside certain HHSD facilities.

44. Chief Colaneri, individually and as policymaker for HHPD, continued to issue schedules with Van winkle assigned inside HHSD schools, even after the first and second

aforementioned incidents involving Van Winkle engaging in the aforementioned inappropriate and unlawful conduct.

45. Dr. Helfant, individually and as policymaker for HHSD, continued to approve schedules with Van Winkle assigned inside HHSD schools, even after the first and second aforementioned incidents involving Van Winkle engaging in the aforementioned inappropriate and unlawful conduct.

46. Further, Chief Colaneri, as Chief and policymaker for the borough of Hasbrouck Heights, has final say over the employment, assignments, duties, training, and schedules of Hasbrouck Heights officers, including Class III officers.

## COUNT I
## PLAINTIFF, on behalf of C.T. and G.T. V. DEFENDANT VAN WINKLE
## VIOLATIONS OF 42 U.S.C. 1983
## Excessive Use of Force

47. Plaintiff incorporates by reference the preceding allegations of this Complaint as though each were individually set forth herein at length.

48. Without any justification or provocation, Defendant Van Winkle acting under color of law, willfully and maliciously attacked C.T. and caused injury. Such acts constituted a grossly excessive use of force.

49. Further, without any justification or provocation, Defendant Van Winkle caused G.T. reasonable fear of imminent bodily harm.

50. The conduct by Defendant Van Winkle was objectively unreasonable and undertaken maliciously and sadistically, for the purpose of causing harm. Such attack was an unnecessary, wanton infliction of harm for no good faith purpose.

51. As a result of the above conduct, C.T. and G.T. suffered physical and/or emotional pain and suffering, as set forth above.

52. By engaging in said conduct, Defendant Van Winkle used excessive force without just or legal cause and thereby violated the laws and Constitution of the state of New Jersey and the New Jersey Attorney General's Guidelines on Use of Force.

53. As a direct and proximate result of the Defendant, C.T. and G.T. suffered physical and/or emotional pain and suffering, and were deprived of their rights under the laws and Constitution of the United States, in particular, the Fourth Amendment to the United States Constitution, the due process clause of the United States Constitution, and 42 U.S.C. §1983, and was further in violation of the Statutes of the State of New Jersey.

54. As a result of the aforementioned occurrence, and due to intention and willful acts of the Defendants, C.T. and G.T. have suffered and will in the future suffer severe emotional distress, bodily injury, pain, emotional distress, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, and medical expenses.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount in excess of One Hundred Thousand Dollars ($100,000.00) plus interest, costs, attorney's fees and punitive damages.

### COUNT II
### PLAINTIFF, on behalf of C.T. and G.T., V. ALL DEFENDANTS
### VIOLATIONS OF 42 U.S.C. 1983

55. Plaintiff incorporates by reference the preceding allegations of this Complaint as though each were individually set forth herein at length.

56. Defendants Borough of Hasbrouck Heights and the Hasbrouck Heights School District, by and through Defendants Colaneri, Defendant Helfant, and other policymakers, developed policies and/or customs which caused the deprivation of G.T. and C.T.'s constitutional and statutory rights.

57. Said policies were inherently deficient, which caused the unlawful conduct by Van Winkle

58. Defendants Borough of Hasbrouck Heights and the Hasbrouck Heights School District, by and through Defendants Colaneri, Defendant Helfant and other policymakers, negligently, recklessly, and/or intentionally:

    a. failed to properly train the Defendant Van Winkle with regard to the excessive use of force towards students;

    b. failed to properly train Defendant Van Winkle with regard to the scope of his duties

    c. failed to properly supervise Defendant Van Winkle with regard to the excessive use of force towards students;

    d. maintained policies and/or customs that were deliberately indifferent to the constitutional rights of its students, in that it knew and acquiesced to unjustified violence by Van Winkle.

59. Based on the foregoing, Defendants negligently, recklessly, and/or intentionally failed to take prompt, appropriate and/or reasonable remedies to prevent, stop, discipline, and remedy the excessive use of force toward students by Van Winkle.

60. Defendants aforementioned failures constituted the cause and moving force behind the intentional, reckless, negligent, and deliberately indifferent actions of the Defendant Van Winkle resulting in the harms to C.T. and G.T. aforesaid.  Individual Defendant Van Winkle acted under and in accordance with the above policies and/or customs in committing the attacks described above.

61. As a result of the attack, C.T. and G.T. suffered injuries as set forth above.

62. As a direct and proximate result of the Defendants, C.T. and G.T. suffered harm and were deprived of their rights under the laws and Constitution of the United States, in particular,

      the Fourth Amendment to the United States Constitution, the due process clause of the United States Constitution, and 42 U.S.C. §1983, and was further in violation of the Statutes of the State of New Jersey.

63. As a result of the aforementioned occurrence, and due to intention and willful acts of the Defendants, C.T. and G.T. have suffered and will in the future suffer severe emotional distress, bodily injury, pain, emotional distress, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, and medical expenses.

      WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of One Hundred Thousand Dollars ($100,000.00) plus interest, costs, attorney's fees and punitive damages (punitive damages against individual defendants only).

## COUNT III
### PLAINTIFF, on behalf of C.T. and G.T., V. ALL DEFENDANTS
### NEW JERSEY CIVIL RIGHTS ACT

64. Plaintiff incorporates by reference the preceding allegations of this Complaint as though each were individually set forth herein at length.

65. As a direct and proximate result of the Defendants, C.T. and G.T. suffered harm and were deprived of their rights under the New Jersey Civil Rights Act..

66. As a result of the aforementioned occurrence, and due to intention and willful acts of the Defendants, C.T. and G.T. have suffered and will in the future suffer severe emotional distress, bodily injury, pain, emotional distress, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, and medical expenses.

      WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of One Hundred Thousand Dollars ($100,000.00) plus interest, costs, attorney's fees and punitive damages (punitive damages against individual defendants only).

## **JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

                                                                        Respectfully submitted,

Dated: July 29, 2019        BY:    <u>/s/ Ryan M. Lockman, Esq.</u>
                                                  RYAN M. LOCKMAN, ESQUIRE
                                                  Attorneys for Plaintiff

| | |
|---|---|
| MARK B. FROST & ASSOCIATES<br>BY: Ryan M. Lockman, Esquire<br>1515 Market Street, Suite 1300<br>Philadelphia, PA 19102<br>P: 215-351-3333<br>RLockman@MFrostLaw.com | Attorneys for Plaintiff |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **CHRISTOPHER TERRANOVA,**<br>As a parent and a legal guardian of his minor children, C.T. and G.T.,<br><br>**Plaintiff,**<br><br>v.<br><br>**BOROUGH OF HASBROUCK HEIGHTS,**<br>**HASBROUCK HEIGHTS SCHOOL DISTRICT**<br>**POLICE CHIEF MICHAEL COLANERI**<br>in his individual and official capacities,<br>**OFFICER HAROLD VAN WINKLE,**<br>in his individual and official capacities,<br>**DR. MATTHEW HELFANT,**<br>in his individual and official capacities,<br><br>**Defendants.** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civ. A. 2:19-cv-12515-JMV-JAD<br><br><u>**JURY TRIAL DEMANDED**</u> |

I, Ryan Lockman, hereby certify that the foregoing amended complaint was served upon the HHSD defendants via ecf, and will be contemporaneously served via personal service upon the HHPD defendants.

                                              Respectfully submitted,

Dated: July 29, 2019      BY:    <u>/s/ Ryan M. Lockman, Esq.</u>
                                                 RYAN M. LOCKMAN, ESQUIRE
                                                 Attorneys for Plaintiff