| | |
|---|---|
| CHRISTOPHER TERRANOVA, As a parent and a legal guardian of his minor children, C.T. and G.T., <br><br> Plaintiff, <br><br> v. <br><br> BOROUGH OF HASBROUCK HEIGHTS, HASBROUCK HEIGHTS SCHOOL DISTRICT POLICE CHIEF MICHAEL COLANERI IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, CIVIL ACTION OFFICER HAROLD VAN WINKLE, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, DR. MATTHEW HELFANT, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, <br><br> Defendants. | Civ. No. 19-12515 (KM) (JAD) <br><br> **OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Christopher Terranova, as parent and legal guardian of two minor children identified as C.T. and G.T., asserts in the amended complaint that an officer of the Borough of Hasbrouck Heights Police Department (the "Police Department") stationed at the children's school violated their constitutional rights when he used excessive force. Before the Court is the motion of two of the defendants, the Hasbrouck Heights School District (the "School District") and its superintendent, Dr. Matthew Helfant, to dismiss the amended complaint. To be clear, the police officer, the police chief, and the Borough of Hasbrouck Heights (the "Borough") have answered the complaint; the issue of their liability, and whether the officer acted wrongfully, will be

1

determined elsewhere. The issue here is whether any such liability—assuming it exists—should extend to the School District and its superintendent.

Defendants Dr. Helfant and the School District assert that the amended complaint does not allege factually that they were responsible for supervising and training this police officer or that they knew of or acquiesced in the officer's behavior (assuming it occurred as alleged). Without such allegations, say these defendants, they cannot be held liable under 42 U.S.C. § 1983 or its state analogue. Accordingly, they move to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (DE 16) Dr. Helfant moves separately to dismiss plaintiff's demand for punitive damages.

Plaintiff replies that Dr. Helfant was a policymaker with respect to the placement of officers within the School District. (DE 27) As he sees it, Dr. Helfant and the School District failed to ensure that the assigned police officer had adequate training, and they acquiesced in his improper behavior. (*Id.*) Plaintiff adds that his right to pursue punitive damages from Dr. Helfant in his individual capacity should not be cut off at the pleading stage, before any facts have been developed. (*Id.*)

For the reasons expressed in this opinion, I will grant the motions of Dr. Helfant and the School District to dismiss Counts 2 and 3 as to themselves only. (DE 16)

## I.     Summary[1]

### a.  Factual background

The School District entered into an agreement with the local Police Department to provide security at its schools. (Am. Cplt. ¶ 13) The agreement

---

[1]     Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

"DE" = Docket entry number in this case.

"Am. Cplt." = The amended complaint filed by plaintiff in this action (DE 13).

2

provided that the Police Department would provide security officers for three schools in the School District, including Lincoln Elementary School. (*Id.*) The Police Department agreed to station one officer at Lincoln Elementary School. That officer, plaintiff agrees, "was at all times acting in the scope of his employment with the police department, was subject to the rules and regulations of the police department, and was to act under the direction of the [Hasbrouck Heights] Chief of Police." (*Id.* ¶ 14) The purpose of having an officer stationed at a school was to prevent and deter anyone who posed a threat to the safety and welfare of the children from entering the school. (*Id.* ¶ 17)

Those selected for assignment to Lincoln Elementary School were otherwise-retired police officers, classified as "Class III" officers. The complaint explains that a Class III officer "maintains full police powers and responsibilities on duty, and is subject to the applicable laws and police policies for the police department where said officer is employed." (*Id.* ¶ 15) One such officer assigned to Lincoln Elementary School was defendant Harold Van Winkle.

In August 2018, Chief of Police Michael Colaneri applied for and received a waiver from the Police Training Commission that allowed Officer Van Winkle to bypass the Police Training Commission's basic training requirements prior to being assigned to Lincoln Elementary. (*Id.* ¶ 31) Van Winkle had not received state-mandated training for school resource officers ("SROs") prior to his assignment to the School District. (*Id.* ¶ 33) In mid-November 2018, Van Winkle was assigned to Lincoln Elementary (*id.* ¶ 19), where plaintiff's children, C.T. and G.T., were enrolled (*id.* ¶ 12).

Plaintiff asserts that school policy required all students to keep their backpacks near the front entrance to the school. (*Id.* ¶ 18) On one occasion in November 2018, while the children were congregated by their backpacks, Officer Van Winkle began yelling at the children because they were being loud. (*Id.* ¶ 20) It was not Officer Van Winkle's duty, says plaintiff, to monitor the children's behavior. (*Id.* ¶ 21) Nevertheless, on that day in mid-November,

Officer Van Winkle threatened and intimidated the children into being quiet by banging his baton against a wall. (*Id.* ¶ 22) After this warning, C.T. made a noise. In response, Officer Van Winkle shoved his baton into C.T.'s chest/collarbone and pressed C.T. against a wall. (*Id.* ¶ 23) This caused C.T. physical pain and prevented him from leaving. (*Id.*)

Plaintiff alleges that Officer Van Winkle in late November 2018 kicked G.T.'s school bag and the bag of another child for no reason. (*Id.* ¶ 26) These outbursts, plaintiff alleges, put G.T. into reasonable fear of imminent bodily harm. (*Id.* ¶ 27)

Plaintiff asserts that defendants Dr. Helfant and the School District were aware of Van Winkle's lack of proper training and that by "allowing Van Winkle to work at [the School District] without adequate training," all defendants, including the Police Department and Dr. Helfant, "knowingly allowed Van Winkle to interact with students and perform duties inside school without the training required to properly perform the functions of the job." (*Id.* ¶¶ 35–36) Plaintiff also alleges that "Chief Colaneri and/or Dr. Helfant were aware of the aforementioned incidents." (*Id.* ¶ 37) The complaint admits that Van Winkle was removed from his assignment by Chief Colaneri after complaints were submitted. (*Id.* ¶ 30) But, despite these incidents, "within months," Chief Colaneri, with the permission of Dr. Helfant and the School District, who are alleged to have final say over which officers are permitted inside the School District facilities, assigned Van Winkle to schools within the School District. (*Id.* ¶¶ 39–43)

It is alleged on information and belief that Van Winkle was sent for SRO training in April 2019. (*Id.* ¶ 34)

### b. Procedural History

On May 14, 2019, plaintiff filed the complaint in the United States District Court for the District of New Jersey. (DE 1) The matter was initially assigned to Judge Vazquez.

On June 20, 2019, defendants the School District and Dr. Helfant filed a motion to dismiss the complaint. (DE 4)

On July 22, 2019, plaintiff filed a letter (DE 7) indicating that he intended to amend the complaint to address some of the issues raised in defendants' initial motion to dismiss.

On July 29, 2019, plaintiff then filed an amended complaint. (DE 11) The amended complaint asserts three claims:

**Count One**: 42 U.S.C. § 1983 claim for use of excessive force asserted against Officer Van Winkle;

**Count Two**: 42 U.S.C. § 1983 claim for violations of plaintiff's Constitutional rights asserted against all defendants; and

**Count Three**: New Jersey Civil Rights Act claim asserted against all defendants.

On July 30, 2019, Judge Vazquez administratively terminated defendants' initial motion to dismiss (DE 4) without prejudice to the right to refile in light of the plaintiff's intervening filing of an amended complaint. (DE 12)

On August 23, 2019, the School District and Dr. Helfant moved to dismiss the amended complaint. (DE 16) Plaintiff opposes that motion. (DE 27)

On December 30, 2019, this matter was reassigned to me.

## II. Discussion

### a. Legal standard

Rule 12(b)(6), Fed. R. Civ. P., provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the

complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

### b. Count 2: Section 1983 Claims

"Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005).

Plaintiff seeks to hold defendants the School District and Dr. Helfant liable for the acts of Officer Van Winkle through theories of supervisory liability and failure to train. I discuss these theories as they relate to each defendant below.

### i. Dr. Helfant

#### 1. Standard

Generally, personal involvement is essential to liability on a civil rights claim, and liability cannot rest on a theory of *respondeat superior. See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Supervisory liability generally requires some affirmative conduct by the supervisor, such as a supervisor's implementation or maintenance of a policy, practice, or custom that caused the plaintiff constitutional harm. *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Santiago v. Warminster Township*, 629 F.3d 121, 129 n.5 (3d Cir. 2010).

There are two potential theories of supervisory liability. Under the first theory, defendants may be sued as policy makers "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).

For a failure to supervise or train claim to amount to "deliberate indifference" a plaintiff must show "that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights. *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (citing *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992) (footnote omitted)).

The second theory of liability provides that a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinates' violations. *See Baker v. Monroe Township*, 50 F.3d 1186, 1190–91 (3d Cir. 1995). Knowledge in a "failure to supervise" claim must consist of either "contemporaneous knowledge

7

of the offending incident or knowledge of a prior pattern of similar incidents." *C.H. ex. rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000). A plaintiff "must portray specific conduct by state officials which violates some constitutional right." *Gittlemacker v. Prasse*, 428 F.2d 1, 3 (3d Cir. 1970).

### 2. *Failure to Supervise*

In Count 2, Mr. Terranova seeks to hold Dr. Helfant liable for Officer Van Winkle's alleged use of excessive force on the basis that (1) Dr. Helfant bears responsibility for creating "policies and/or customs which caused the deprivation of G.T.'s and C.T.'s constitutional and statutory rights" (*see* Am. Cplt. ¶ 56); or (2) that Dr. Helfant maintained policies that were deliberately indifferent to the constitutional rights of the students at Lincoln Elementary School because he knew of the harms inflicted by Officer Van Winkle and failed to act. (*Id.*) Thus, plaintiff asserts either that Dr. Helfant personally participated in the harm or was deliberately indifferent to the harm.

Regarding Dr. Helfant's personal involvement, Mr. Terranova does not assert any facts suggesting that Helfant personally directed a violation of plaintiff's children's rights or knew of or participated in the harm. The supervisory claim in the amended complaint is premised entirely on the allegation that Dr. Helfant "knew and acquiesced to" the alleged constitutional violations and, despite this knowledge, did not promulgate any corrective policies or take action to permanently remove Van Winkle. (*Id.* ¶¶ 35, 37–38, 58)

These allegations, setting aside their heavy reliance on "information and belief" and somewhat conclusory nature, at best allege that Dr. Helfant learned of the incident or incidents after they occurred. They fail to suggest how Helfant's actions caused or contributed to these incidents at the time. Nor do they suggest factually that Dr. Helfant's behavior, policies, or customs contributed to the harm. The amended complaint vaguely asserts that Dr. Helfant was a "policymaker" in that he had to approve who was assigned to each school within the School District. (*Id.* ¶ 15) To accept this allegation—that

Dr. Helfant is liable because he hired or approved the hiring of the offending person—is tantamount to *respondeat superior,* which is not a basis for liability. This allegation does not establish *what* policy instituted by Dr. Helfant enabled Officer Van Winkle to use the excessive force that resulted in the harm here.

Furthermore, the amended complaint does not even suggest that Dr. Helfant in either his individual or official capacity was Van Winkle's supervisor. Indeed, the amended complaint establishes the opposite: that Van Winkle was employed by and supervised by the Police Department and /or Chief Colaneri. (*Id.* ¶¶ 15, 17) "[A]t all times," the complaint alleges, the officer acted as an employee of the Police Department and was subject to the rules, regulations, and policies of the Police Department. (*Id.* ¶¶ 14, 15, 17)

In short, Mr. Terranova has adduced no facts demonstrating Dr. Helfant's personal involvement. This attempt to hold Dr. Helfant liable based on nothing more than his general supervisory authority rests, at least implicitly, on the doctrine of *respondeat superior. See Munoz v. City of Union City,* 481 F. App'x 754, 760 (3d Cir. 2012). Such liability is not permitted in civil rights actions. *See Chavarriaga,* 806 F.3d at 222.

I turn to the allegation of supervisory liability based on Dr. Helfant's personal knowledge of the harm and deliberate indifference thereto. As noted *supra,* that Third Circuit in *Carter* adopted three factors for determining when allegations amount to deliberate indifference. *Carter,* 181 F.3d at 357 (citing *Walker* 974 F.2d at 297–98). I find that factor (1)—that Dr. Helfant knew that Officer Van Winkle would confront a situation like the one that led to the alleged harms—has not been sufficiently alleged. The amended complaint states that Officer Van Winkle was stationed at Lincoln Elementary School for the purpose of "deter[ring] and prevent[ing] intruders and/or dangerous individuals from entering the school." (Am. Cplt. ¶ 17, 21) There are no allegations that Officer Van Winkle's contemplated responsibilities included the disciplining of children; that Dr. Helfant knew he would do so; or, *a fortiori,*

9

that Helfant could reasonably have foreseen that, in doing so, the officer would become angry and act inappropriately.

Regarding factor (2)—that the situation involves a history of employee mishandling—there are no relevant factual allegations. There is nothing to suggest that, prior to the first incident, Dr. Helfant had any actual knowledge of concerns regarding Van Winkle. The amended complaint asserts that following the C.T. incident, Officer Van Winkle then kicked G.T.'s backpack. (*Id.* ¶ 26) Only an extremely generous review of these allegations suggests that this conduct violates G.T.'s constitutional rights. But in any event, there are no specific factual allegations that Dr. Helfant knew of either incident before they occurred. The complaint objects that the removal of Officer Van Winkle was only temporary, and that he went to work at another school. The manner in which that subsequent assignment could have violated the rights of C.T. or G.T., however, is unspecified.

Finally, I will assume for argument's sake that factor (3)—that the wrong choice by Officer Van Winkle could frequently cause a deprivation of a student's constitutional rights—is met.

Nevertheless, taken as a whole, the amended complaint does not plead deliberate indifference on the part of Dr. Helfant. There are no facts that he had personal knowledge that Officer Van Winkle had some relevant propensity or predisposition. There is no factual allegation that Helfant turned a blind eye to Officer Van Winkle's alleged behavior. When confronted with complaints from parents, someone in authority removed Van Winkle from Lincoln Elementary (although it is alleged that he was subsequently reassigned within the School District). (*Id.* ¶¶ 39, 40)

Accordingly, Count 2, insofar as it is based on Dr. Helfant's failure to supervise Officer Van Winkle, is **dismissed** for failure to state a claim.

### 3. Failure to Train

Plaintiff's failure-to-train theory of liability, in respect to Dr. Helfant, suffers from the same pleading defects as the failure-to-supervise theory.

The Third Circuit has explained that "a failure to train may amount to deliberate indifference where the need for more or different training is obvious, and inadequacy very likely to result in violation of constitutional rights .... For example, if the police often violate rights, a need for further training might be obvious." *Carter*, 181 F.3d at 357. The courts have been wary of permitting a self-proving allegation to the effect that a violation occurred, and that therefore there must have been inadequate training. Thus the alleged existence of a "policy" of failing to properly train personnel has been called a "most tenuous" basis for liability. *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 1359 (2011). In *Thomas v. Cumberland County*, 749 F.3d 217 (3d Cir. 2014), the Court of Appeals helpfully summarized the elements of such a "failure-to-train" claim, which must rise to the level of "deliberate indifference" and bear a close causal relation to the violation that occurred:

> Where the policy "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) ("Canton")). Additionally, "the identified deficiency in a city's training program must be closely related to the ultimate injury;" or in other words, "the deficiency in training [must have] actually caused" the constitutional violation. *Canton*, 489 U.S. at 391.

*Id.* at 222.

As an initial matter, the amended complaint does not allege how Dr. Helfant was personally responsible for training an officer who was an employee of the Police Department. By plaintiff's own admission, Officer Van Winkle was not an employee of Dr. Helfant: Officer Van Winkle "was at all times acting in the scope of his employment with the police department, was subject to the rules and regulations of the police department, and was to act under the direction of the [Hasbrouck Heights] Chief of Police." (*Id.* ¶ 14) As such, Officer Van Winkle "maintain[ed] full police powers and responsibilities on duty, and [was] subject to the applicable laws and police policies for the police

11

department where said officer is employed." (*Id.* ¶ 15) This alone is fatal to plaintiff's failure to train claim with respect to Dr. Helfant.

Nevertheless, the amended complaint appears to base its failure to train theory on the following allegations:

- Officer Van Winkle was given a waiver by the Police Department such that he did not have to sit through "basic training" prior to his assignment at Lincoln Elementary, (Am. Cplt. ¶ 31);
- Officer Van Winkle had not been sent by the Police Department to Police training Commission mandated training for school resource officers. (*Id.* ¶ 32–33);
- Dr. Helfant was "aware of Van Winkle's failure to attend said training, yet [] kept him assigned to [the School District]." (Am. Cplt. ¶ 36).

Under these facts, it is hardly "obvious" from someone in Dr. Helfant's position that Officer Van Winkle had inadequate training to the point that Dr. Helfant was deliberately indifferent. *See Carter*, 181 F.3d at 357. Generally, an inadequate-training allegation is brought against the person's employer—here, the police department—and it is in fact asserted against that employer. The inadequate-training allegation against Dr. Helfant is tenuous, as he stands at one remove from any responsibility for training. Officer Van Winkle was assigned to the School District at the recommendation of the Police Department. Based on the determination of the police department, Officer Van Winkle qualified for and received a waiver of "basic training." Dr. Helfant's acceptance of the police department's recommendation of Officer Van Winkle, a retired "Class III" officer who presumably had years on the job, was thus reasonable and does not in itself bespeak negligence, let alone "deliberate indifference."

At the motion-to-dismiss stage, I accept as true the allegation that the police department had not sent Van Winkle to specialized training for school resource officers. (*Id.* ¶¶ 33, 36) Still, the allegations fall short:

- The amended complaint makes no actual factual assertions making it plausible that Dr. Helfant was aware, before the incident,

12

that Van Winkle had not been sent for the SRO training, which (as the complaint itself states) is a police department responsibility.

- Nor does the complaint identify some aspect or component of the training that bore the required very specific causal connection to the violation alleged here.

- Nor does the amended complaint really allege that the training requirements were not complied with, even by the police department—let alone that Dr. Helfant should have been aware of such noncompliance.[2]

Thus it cannot be said that Dr. Helfant is alleged factually to have acted with deliberate indifference with respect to Officer Van Winkle's training.

For the foregoing reasons, Dr. Helfant's motion to dismiss Count 2 is **granted**.

### ii. The School District's Liability

The issues in relation to the School District's liability are closely related, although technically distinct. Terranova alleges *Monell* liability claims against the School District. He asserts that the School District failed to supervise Officer Van Winkle and failed to train him in a way that would ensure that he did not violate C.T's and G.T's constitutional rights.

The short answer to these contentions is that the amended complaint's theory of liability appears to flow to the School District solely through the action or inaction of its superintendent, Dr. Helfant. For the reasons stated above, the amended complaint fails to plead an underlying constitutional

---

[2]      Guidance on the Police Training Commission's website indicates that SRO training must be completed within 12 months after appointment. *See* https://www.state.nj.us/lps/dcj/njptc/pdf/SLEO-III_Checklist.pdf. Officer Van Winkle was appointed as a Class III officer in August 2018, and the complaint itself acknowledges that he was sent for SRO training some nine months later, in April 2019. (Am. Cplt. ¶¶ 31–34) The statute authorizing the creation of a SRO training course and promulgation of regulations for that purpose is N.J. Stat. Ann. § 52:17B-71.8. That statute is accompanied by a statement of the Assembly Education Committee Statement which specifically provides that the bill "does not preclude a school district from appointing a safe schools resource officer without referral to or certification by the academy." The sense of that statement, and even of the statute itself, is that the course will be offered to persons currently employed by the police or the district.

violation against Dr. Helfant. It follows that the School District cannot be derivatively liable for such a violation.

The standard for municipal liability for actions of employees was delineated in *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Section 1983 liability cannot be predicated on *respondeat superior*. See *id.* at 694; *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parrat v. Taylor*, 451 U.S. 527, 537 n. 3 (1981)). Rather, it is only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury . . . [that] the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. The two paths to *Monell* liability, then, are municipal "policy" or "custom."

"'Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict.' Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citations omitted). Allegations of "continued official tolerance of repeated misconduct" and that the municipality has done nothing to end or change the practice, supports a finding of a custom attributable to the municipality. *Id.* at 851–52.

### 1. Failure to Supervise

The amended complaint asserts that the School District "failed to properly supervise Defendant Van Winkle with regard to the excessive use of force towards students." (Am. Cplt. ¶ 58) The School District, says plaintiff, through its school board "controls all operations for the entire Hasbrouck Heights School District" (*see id.*¶ 10), and that with the permission of the

14

School District, Van Winkle was returned to an assignment within the District.[3] (*Id.* ¶ 40)

These allegations are insufficient as they consist solely of legal boilerplate. As noted above, *see* Section II.b.i.2, the amended complaint fails to make any factual allegation of an express District policy or custom authorizing Officer Van Winkle's alleged improper conduct. To the extent the amended complaint does allege any facts related to that issue, they directed to the activity or inactivity of the Police Department and its Chief of Police, who, according to the complaint itself, employed and supervised Van Winkle. (*See id.* ¶¶ 14–15, 31–33) By contrast, the allegations with respect to the School District are mere assertions of an entitlement to relief, which, without supporting factual allegations, which are insufficient under Fed. R. Civ. P. 8(a)(2). *See McTeman v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009)

I therefore find that Count 2 does not sufficiently allege a failure to supervise with respect to the School District. The School District's motion to dismiss Count 2 in so far as it asserts a failure to supervise theory of liability is **dismissed**.

### 2. Failure to Train

Likewise, the amended complaint fails to assert a claim that the School District is liable to plaintiff for failure to train Officer Van Winkle. The amended complaint contains no facts to suggest that Officer Van Winkle was an employee of the School District, or that the School District was responsible for his training. As noted above, this fact alone severely undermines plaintiff's failure-to-train claims with respect to the School District. *Carter*, 181 F.3d at 357; *see* Section II.b.i.2, *supra*.

I will assume, however, that this pleading deficiency was not fatal; the School District is alleged, not to have botched the training itself, but to have permitted the assignment of someone it knew was not properly trained. Still,

---

3      Allegations dating from after the incident, while not irrelevant, do not establish that a prior policy permitted the incident to occur.

there are no factual allegations that the Police Department failed to comply with training requirements, that anyone at the School District had specific knowledge of any alleged noncompliance, condoned the alleged lack of training, or acted with deliberate indifference when confronted with information that Officer Van Winkle did not have the supposed requisite training.

Count 2 is therefore **dismissed** with respect to the School District.

### c. Count 3: NJCRA Claim

The third count alleges a violation of state constitutional protections under the New Jersey Civil Rights Act ("NJCRA"). The NJCRA, N.J. Stat. Ann. § 10:6-2(c), provides that "[a]ny person who has been deprived of any substantive rights, privileges or immunities secured by the Constitution or laws of this State by a person acting under color of law, may bring a civil action for damages."

The New Jersey State Legislature, when it enacted the NJCRA, intended it to parallel 42 U.S.C. § 1983, and sought to incorporate existing § 1983 jurisprudence. *Perez v. Zagami*, 218 N.J. 202, 515 (2014); *see also RaCapt. Mos v. Flowers*, 429 N.J. Super. 13, 23 (App. Div. 2012) (stating that NJCRA was "modeled on the federal civil rights law which provides for a civil action for deprivation of civil rights." (citations omitted)). Thus, the NJCRA is construed nearly identically to Section 1983.

In Count 3, Mr. Terranova alleges that defendants are liable under the New Jersey Civil Rights Act for his children's harm during the two incidents in November 2018 because of the same intentional and willful acts asserted under Count 2. (Am. Cplt. ¶ 64–66) The parties have not suggested any distinction between the Count 3 claims under NJCRA and their Count 2 counterparts under 42 U.S.C. § 1983. Therefore, for the reasons outlined in Section II.b, *supra*, defendants' motion to dismiss Count 3 with respect to Dr. Helfant and the School District is granted.

### III.    Conclusion

For the reasons set forth above, the motion of defendants the School District and Dr. Helfant to dismiss the complaint against themselves only (DE 16) is **granted**. This dismissal is without prejudice to the filing, within 30 days, of a properly supported motion to amend. Dr. Helfant's motion to dismiss plaintiff's prayer for punitive damages is **dismissed** as moot.

An appropriate order follows.

Dated: January 30, 2020.

**Kevin McNulty**
**United States District Judge**